DAVID RANDON, PLAINTIFF IN ERROR, v. THOMAS TOBY.

An agreement by a debtor to apply a certain portion of his crops towards the extinguishment of the debt in consideration of further indulgence, will take a case out of the statute of limitations, and may be set up in avoidance of the plea by way of estoppel upon the debtor.

The defendant is not at liberty to complain that the construction of this instrument was left to the jury, because it was so done at his own request, and because, if the court had construed it, the construction must have been unfavorable to the defendant.

The bankruptcy of the plaintiff prior to the time when he took the notes payable to himself was no legal defence to the action. He was one of the persons authorized to settle up the insolvent estate, and whether or not he accounted to his creditors for the proceeds was no question between him and the maker of the notes.

The plea that the notes were given for African negroes imported into Texas after 1833 was no legal defence. The creditor had no connection with the person who introduced the negroes contrary to law. If the negroes had been declared to be free, the consideration of the notes would have failed, but the debtor still held them as slaves, and therefore received the full consideration for his notes.

THIS case was brought up, by writ of error, from the District Court of the United States for Texas.

It was a suit brought by Toby, a citizen of Louisiana, by way of petition, upon two promissory notes executed by Randon. The notes are stated in the first bill of exception. The reporter will not undertake to trace the history of the suit. d refers to the opinion of the court for his reasons for not doing so. The following table will present a summary view of the condition in which the pleadings were finally placed: —

1847, January 4, petition filed.

1847, February 4, demurrer, plea of limitations, and answer filed by defendant.

1848, February 10, petition amended.

1848, February 28, answer amended, and says notes given for purchase of African negroes, &c.

1848, March 11, defendant withdraws part of first plea, and demurs and excepts to part of petition.

1848, May 15, plaintiff further amends petition.

1848, May 31, defendant further answers plaintiff's amendment, craves oyer, &c.

1848, June 5, defendant amends two pleas and files three further answers.

1848, June 8, plaintiff further amends petition.

1848, June 8, defendant amends answer.

1848, June 9, defendant demurs.

1848, June 12, plaintiff further amends petition.

1848, December 14, defendant further amends answer.

1848, December 15, plaintiff files exceptions to demurrers and pleas.

1848, December 19, defendant further amends answer.
1848, December 19, defendant amends again.
1848, December 22, plaintiff files two demurrers.
1848, December 23, trial.

The trial is thus stated in the record: —

" And thereafter, to wit, on the 23d day of December, in the year of our Lord 1848, being a day of the December term of the said court, the following judgment was rendered in the said cause, to wit: —

### " Thomas Toby *v.* David Randon.

" This day came the parties aforesaid by their attorneys, and upon motion of defendant by attorney, it is ordered that he have leave to amend his answer herein, by filing pleas marked numbers eleven, twelve, thirteen, fourteen, and fifteen; and thereupon, plaintiff excepted to said pleas, and said exceptions were argued; and because it seems to the court, that the exceptions to pleas number eleven and thirteen are well taken, it is ordered that the same be allowed; but because, as to pleas number twelve, fourteen, and fifteen, the said exceptions are not well taken, it is ordered that the same be disallowed; and on further motion of said defendant by counsel, it is ordered that he have leave to amend his said answer, by filing pleas sixteen, seventeen, eighteen, and nineteen, and thereupon the plaintiff excepted to said pleas, and said exceptions were argued; and because it seems to the court that the exceptions to pleas sixteen, eighteen, and nineteen are well taken, it is ordered that the same be allowed; but because, as to plea number seventeen, the said exceptions are not well taken, it is ordered that the same be disallowed; and the parties being now at issue, it is ordered that a jury come here, &c.; whereupon came a jury of lawful men, to wit, F. S. Stockdale, Aidan Pullam, James L. Smithers, John P. Roan, James G. Heard, Israel Savage, J. H. McGill, J. S. Stafferd, Angus McNeill, Frederick Rankin, Augustus Hotchkiss, and J. C. Shaw, who, being sworn well and truly to try the issue joined, upon their oath do say, ' We, the jury, find the issues joined in favor of the plaintiff, and assess his damages, by reason of the breaches of promise in the petition mentioned, to $ 5,758.04.'

" And thereupon, to wit, on the day and year aforesaid, and before the jury aforesaid had retired, the said defendant by his said attorneys excepted to several opinions of the court given upon the trial of the said cause, and tendered eight bills of exceptions, which were received, signed, and sealed by the court, and ordered to be made part of the record in the said cause, and are in the words and figures following, to wit: —

Randon *v.* Toby.

(These bills of exceptions filled seventy-eight pages of the printed record. The following is an abstract of them.)

## First Bill.

"Be it remembered, that by the rules of this court the practice and proceedings on the common law side thereof are governed by the laws and rules regulating practice and proceedings in the courts of the State of Texas, except so far as the same may, by some order of this court, or by the laws of the United States, be altered or modified; and that, by the laws of the said State, proceedings are by petition and answer, or plea or pleas, and, if the plaintiff thinks it proper, a special replication to any of the pleas of the defendant may, both by the practice of the courts of the said State, as well as by the general orders of this court, be filed with the effect of a like replication at common law, but no replication is required by the rules; and this cause came on to be tried before the court and jury, on the petition of the plaintiff as amended, and the following pleas of the defendant, which on argument were adjudged sufficient, and were sustained against the exceptions or demurrers of the plaintiff, to wit, pleas numbered two, three, four, five, six, eight, nine, ten, twelve, fourteen, fifteen, and seventeen; the following pleas, numbered seven, thirteen, sixteen, and eighteen, having been on argument adjudged insufficient. And on the trial of the said cause, the plaintiff, to sustain the issues joined, gave in evidence the two promissory notes sued on, in words and figures following, to wit:—

"'$ 1,781$\frac{45}{100}$. *Galveston, June* 21, 1841.

"'Twenty-four months from date, I promise to pay to the order of Thomas Toby, Esq., one thousand seven hundred and eighty-one and $\frac{45}{100}$ dollars, value received, with interest from the 14th of April, 1841, until paid. D. RANDON.'

"'$ 1,781$\frac{45}{100}$. *Galveston, June* 21, 1841.

"'Twelve months from date, I promise to pay to Thomas Toby, Esq., or order, one thousand seven hundred and eighty-one and $\frac{45}{100}$ dollars, value·received, with interest from the 14th of April, 1841, until paid. D. RANDON.'

"Which promissory note was marked 2.

"The plaintiff then offered in evidence the following instrument in writing, marked No. 3:—

"'This instrument of March 14th, 1844, witnesseth, that whereas McKinney & Williams of Galveston, and Thomas F. McKinney, agent of Thomas Toby, of New Orleans, hold several notes drawn by me, and past due, and Thomas F.

McKinney, some two years since, did agree for McKinney & Williams and the said Thomas Toby to grant me further indulgence on said notes over and above the time of their maturity, and I did then say, promise, and agree that I would deliver to him, the said Thomas F. McKinney, each and every year, all the one half of every crop of cotton in payment, first of the amount due the said McKinney and Williams, if there be any thing due them over and above the amount of purchase of negroes bought of them, and then in extinguishment of said amount of purchase of negroes, of which my note to said Toby is part of consideration ; and I further agree and oblige myself, that any surplus I may have from the proceeds of the other half of my crops, over and above my wants, exclusive of any speculations or purchase of negroes, shall also be turned over as above ; and I further bind and obligate myself, my heirs, assigns, and administrators, that no advantage shall be taken, or any plea of statute of limitations be made, to avoid the payment of said notes, but they shall be and remain in as full force and effect as though they were renewed.     D. RANDON.'

" To the admissibility of which said writing, the defendant, by his counsel, objected, as not sufficient to take the said promissory note, marked 2, out of the statute of limitations. But the court overruled the said objection, made by the counsel of the defendant, and permitted the said writing to be read in evidence to the jury ; to which opinion and ruling of the court, permitting the said writing to be read in evidence to the jury, the defendant, by his counsel, excepted, and tendered this his first bill of exceptions, which he prays may be signed, sealed, and made a part of the record in the cause, which is done accordingly.

           " JOHN C. WATROUS.

" *Saturday, December 23d,* 1848."

### Second Bill.

" Be it remembered, that after the jury were sworn to try the issues in this cause, the plaintiff, to maintain the said issues on his part, introduced the evidence contained in the bill of exceptions number one, heretofore filed in this cause ; and thereupon the said plaintiff closed the evidence on his part ; and the said defendant, to maintain the said issues on his part, gave in evidence the deposition of John Randon, as follows, to wit : —

" ' The witness was present at the house of David Randon, about the 1st of November, 1846, when Ephraim McLean came there with a power of attorney from Thomas F. McKinney, authorizing the said McLean to settle all business between the said David Randon and the said Thomas F. McKin-

Randon *v.* Toby.

ney, and the firm of McKinney & Williams, and for the purpose of so settling such business, and the said McLean stated that such was the purpose of his visit. After the settlement between Randon and McLean was agreed upon, witness came to Galveston at the instance of the said David Randon, for the purpose of receiving from Thomas F. McKinney a receipt in full of all claims held by the said McKinney against the said David Randon, and also a cotton obligation. The said McLean knew that the respondent was coming, and what he was coming for, and knew that the respondent came to obtain the receipt and the cotton obligation, and the said McLean consented thereto.

" ' When I arrived in Galveston, I remained a day or two, and did not see McKinney; during the time I saw McLean, and he handed me the receipt; I asked him where the obligation was, and he told me he had n't got it. I told him that I must have it, because I was instructed to get that particularly by my uncle, David Randon. I rode out to Mr. McKinney's house, and demanded of him the cotton obligation, which he held against David Randon, and which I was requested to get. As near as I recollect, he said to me, " I remember the obligation, but it is either lost or mislaid; but it is of no consequence in this settlement, for the receipt which I have given McLean for you includes all." I rather insisted on his looking for it, but he said he would n't know where to look for it, as he had been sick for some time, and his papers were mislaid. He seemed to have no objections in the least to giving up the obligation, if he could have found it; he did not suggest any rights which he or any one else had, growing out of the said obligation. Mr. McKinney said the receipt included all, and that the obligation was of no consequence, therefore, to David Randon. David Randon sent to McKinney all the African negroes he had, except two; I think he sent twenty-one; he retained two; one he retained in accordance with the settlement, and the other he purchased and gave his note for.'

" *Cross-examination.*—' The settlement, so far as witness knew, was not reduced to writing; he was present a part, but not all, of the time when the negotiation between Randon and McLean for a settlement was going on; McLean delivered to Randon some notes, but nothing else, so far as witness knew; did not know what notes they were; has heard from David Randon that they were his notes, held by Thomas F. McKinney; witness demanded of Thomas F. McKinney the cotton obligation; did not demand the Toby notes.'

" The counsel for the plaintiff objected to the reading of the foregoing testimony of John Randon.

42 *

" And the said defendant, further to maintain the said issues on his part, offered in evidence the following instrument in writing, and to prove the signature to the same to be the hand-writing of Thomas F. McKinney : —

*" 'Galveston, November* 11*th,* 1846.

" ' Know all men by these presents, that a settlement made a few days since with David Randon, by E. McLean, represent-ing McKinney & Williams, and Thomas F. McKinney, was a full and final settlement of all notes and accounts held by the said firm, or the said McKinney, against said Randon ; and the said McKinney & Williams do hereby grant to him, the said Randon, a full release and acquittance of all notes and accounts, according to the tenor of said settlement ; it being understood that there is now no unsettled note or account be-tween us, except some land obligations of small value, and an obligation given to E. McLean, in the name of Thomas F. McKinney, for $ 700, or a return of a negro man, Sam, or one of equal value, which obligation bears date 9th November, 1846.                              THOMAS F. MCKINNEY,
                    *For himself and McKinney & Williams.'*

" Whereupon the counsel for the said plaintiff moved the court to exclude the said instrument in writing from going to the jury as evidence in this cause, because the same was not pertinent to any of the issues therein ; and the court sustained the objection of the said counsel for the plaintiff, and excluded the said instrument of writing from going to the jury ; to which opinion of the court, sustaining the said objection, and exclud-ing the said instrument in writing so offered as evidence, the defendant, by his counsel, excepted ; and tendered this his second bill of exceptions, which he prays may be signed, sealed, and made part of the record in this cause, and the same is now done accordingly.

                                   " JOHN C. WATROUS.

" *Saturday, December* 23*d,* 1848."

### *Third Bill.*

" Be it remembered, that on the trial of this cause, after the jury were sworn to try the issues joined, the plaintiff and de-fendant, to maintain the said issues on their respective parts, introduced the evidence contained in the former bills of excep-tions, numbers one and two ; and thereupon the said defend-ant, further to maintain the said issues on his part, gave in evidence a series of accounts which were proved by Thomas F. McKinney to be accounts current in the handwriting of the clerks of the firm of McKinney & Williams, and of Thomas

F. McKinney; the accounts, rendered the 30th of August, 1846, showed a balance at that date in favor of McKinney & Williams against David Randon, of $ 11,997.42; and a balance at the same date in favor of David Randon against Thomas F. McKinney, of $ 2,648.51, which was transferred to the credit of David Randon with the firm of McKinney & Williams, and left the balance due them from Randon $ 9,348.91."

(These accounts extended over ten pages of the printed record, and Thomas F. McKinney was then examined on the part of the defendant. Being cross-examined by the plaintiff.)

" 'To what note or notes, from David Randon to Thomas Toby, the instrument in writing, dated March 14th, 1844, and filed with the plaintiff's amendment to his petition, marked No. 3, and fully set forth in the bill of exceptions number one, referred.' And the said Thomas F. McKinney thereupon stated, and gave in evidence before the jury, that the said writing referred to both of the promissory notes sued on, being the same filed with the amended petition, marked 1 and 2, and fully set forth in the bill of exceptions No. 1, heretofore filed in this cause. Whereupon the counsel for the defendant insisted before the court, and moved the court that the said evidence of the said McKinney should be ruled out and withdrawn from the jury, because the same was contradictory to the said writing marked No. 3, as aforesaid, which it pretended to explain, — the said writing referring only to one note from David Randon to Thomas Toby.

" But the court overruled the said motion of the said defendant's counsel, and permitted the said evidence of the said McKinney to remain before the jury. To which opinion and ruling of the court overruling the said motion, and permitting the said evidence to remain before the jury, the said defendant, by his counsel, excepted, and tendered this his third bill of exceptions, which he prays may be signed, sealed, and made a part of the record in this cause ; which is done accordingly.

                                        "JOHN C. WATROUS.

" Saturday, December 23d, 1848."

### Fourth Bill.

" Be it remembered, that on the trial of this cause, after the jury were sworn to try the issue joined, the plaintiff and defendant, to maintain the said issues on their respective parts, gave the evidence which is contained in the bills of exceptions, numbers one, two, and three, heretofore filed in this cause ; whereupon the said plaintiff, further to maintain his said issues, examined Thomas F. McKinney, who gave in evidence as follows : " —

(The evidence of McKinney related to the alleged settlement and exhibit No. 3; and defendant then offered a copy of the record in bankruptcy of Toby in Louisiana. This record occupied forty-eight printed pages.)

"And the defendant offered evidence to prove that the Thomas Toby therein named was the plaintiff in this cause; but the counsel for the plaintiff objected to the introduction of such copy as evidence before the jury, as being insufficient to sustain any of the pleas of the said defendant; and such objection was sustained by the court, and the copy aforesaid was not allowed to be introduced as evidence on the part of the said defendant; to which opinion of the court, sustaining the said objection made by the counsel for the plaintiff, and refusing to allow the said copy to go to the jury as evidence, the defendant, by his counsel, excepted, and tendered this his fourth bill of exceptions; which he prays may be signed, sealed, and made part of the record in this cause, and the same is now done accordingly.

"JOHN. C. WATROUS.

"*Saturday, December 23d,* 1848."

*Fifth Bill.*

"Be it remembered, that after the jury were sworn to try the several issues in this cause, the plaintiff, to maintain the said issues on his part, gave in evidence the testimony stated in full in the former bills of exceptions; and thereupon the defendant, also to maintain the said issues on his part, gave in evidence the testimony stated in full in the former bills of exceptions. And the defendant there closed the testimony on his part.

"And thereupon the plaintiff, further to maintain the issues joined on his part, gave in evidence the deposition of Ephraim McLean, as follows: —

"'In the settlement between David Randon and McKinney & Williams, I had no authority to settle any notes drawn by David Randon in favor of Thomas Toby, nor did I know that there were any such notes in existence at the time of said settlement. I cannot now state all that was embraced in the settlement so made by me; there were a great many transactions between the parties, David Randon and McKinney & Williams, of from four to five years' standing.'

"The said plaintiff then introduced as a witness Thomas M. League, and thereupon asked and demanded of the said League 'to state to the jury what he knew about the existence of slavery for life in Africa.' To which question by the said plaintiff's counsel to the said League, the said defendant, by his counsel, objected; because the said evidence was not prop-

erly admissible under any allegation in the pleadings in the said cause; because the said question did not propose any proper and legal manner of proving the existence of slavery for life in Africa; and because it did not appear that the said Thomas M. League was a person qualified to prove such facts.    But the court overruled the objection of the defendant's counsel to the said question by the plaintiff to the said Thomas M. League, and permitted the same to be put to the said League, and answered as evidence in this cause before the jury.

"To which opinion and ruling of the court, permitting the said question to be put to the said League, and answered as evidence in this cause before the jury, the defendant, by his counsel, excepted, and tendered this his fifth bill of exceptions, and prays that the same may be signed, sealed, and made a part of the record in this cause; which is done accordingly.

"JOHN C. WATROUS.

"*Saturday, December 23d,* 1848."

### *Sixth Bill.*

"Be it remembered, that after the jury were sworn to try the several issues in the said cause, the plaintiff, to maintain the said issues on his part, introduced the evidence contained in the former bills of exception; and thereupon the defendant also introduced the evidence contained in the former bills of exception, and the plaintiff thereafter introduced the evidence of Thomas M. League, as follows:—

"'Witness has made two voyages to the coast of Africa, the first in the year 1834, the second in the year 1835, and remained on the coast each time about six months. Witness was observant and inquiring in regard to the customs and habits and condition of the people; knows that slavery existed in all parts of Africa where he landed, except in Liberia. A large proportion of the people were slaves. Some masters held great numbers; the slavery which existed was a slavery for life, and was of the most despotic and arbitrary character.'

"*Cross-examined.*—'Witness considers himself as understanding very well the customs and conditions of the Africans among whom he was.  Witness did not touch upon the Gold Coast; knows nothing whatever of the Gold Coast or Lucame tribe of Africans; witness was in Liberia, and upon the Slave Coast, and upon the Grain Coast.  Besides, the coast of Africa runs a good deal east and west in that portion of it.  It was sometimes the case that negroes who were captured in battle were brought from the interior of the country to the African coast and sold.

"' Witness would not feel himself qualified to give information or advice as to the laws which exist among the Africans, but he well knows the habits, customs, and institutions of the country, for he was observant and made them his study, and feels himself qualified to testify in relation to them.'

" Upon the trial of this cause, the counsel for the plaintiff and defendant relied upon certain laws and parts of laws and constitutions of Spain, of the United Mexican States, of the State of Coahuila and Texas, and of the Republic of Texas, copies of the original of which, or correct translations, here follow:"—

(Then followed a decree of the king of Spain and the Indies, December, 1817, and the other laws mentioned above, and the bill of exceptions proceeded thus:—)

" All of which laws and parts of laws and constitutions are to be considered as referring to and making part of the evidence in the said cause; and after introducing the same, the parties closed their testimony in this cause.

" Whereupon the counsel for the defendant moved the court to instruct the jury as follows, that is to say:

" First. That the instrument dated March 14, 1844, does not itself amount in law to an acknowledgment of the justice of any particular claim, and cannot remove the bar of the act of limitations to either of the particular notes now sued on.

" Second. That if the jury believe, from the testimony, that the negroes, for the purchase of whom the notes now sued on were given, were Africans imported into Cuba in the year 1835, and brought from Cuba to Texas in the same year, for the purpose of being held or sold as slaves, they will find for the defendant.

" Third. That if the jury believe, from the testimony, that the negroes, for the purchase of whom the notes now sued on were given, were imported into Texas before the adoption of the constitution of the republic of Texas; and if it has not been proved that they were slaves for life immediately before they were so brought to Texas, and also that they were in bondage at the time of the adoption of the constitution, and also that they were the *bona fide* property of the person then holding the same, then the jury will find for the defendant.

" Fourth. That the proof of *bona fide* property in the persons of color referred to in the constitution of the republic of Texas, is only a bill of sale or some legal conveyance and possession under it, and that mere proof of possession and acquiescence on the part of those held as slaves is not sufficient proof of property.

" Fifth. That if the jury believe, from the testimony, that the negroes, for the purchase of whom the notes now sued

upon were given, were brought to Texas in the year 1835, then, unless it is also proved to their satisfaction that the same negroes were lawfully held in bondage as indentured servants at the time of the adoption of the constitution of the republic of Texas, the constitution did not make them slaves, and the jury will find for the defendant.

"Sixth. That if the jury believe, from the testimony, that the negroes, for the purchase of whom the notes now sued on were given, did not voluntarily emigrate to Texas, or were not brought to Texas by some person emigrating there with them, but were imported in the course of traffic in negroes, and for the purpose of such traffic, in the year 1835, then the constitution did not make them slaves, and the jury will find for the defendants.

"Seventh. That if the jury believe, from the testimony, that the negroes, for the purchase of whom the notes now sued on were given, were brought from Africa to Cuba for the purpose of traffic, and to be sold as slaves, since the year 1821, then it makes no difference whether they were before held as slaves for life in Africa or not.

"Eighth. That proof of a custom in Africa to hold negroes as slaves, without proof of any law authorizing this custom, or proof that the nations or tribes in Africa have no laws, is not sufficient to show that such negroes were slaves for life.

"Ninth. That proof that slavery exists in other nations or tribes in Africa affords no legal presumption, in the absence of express proof, that slavery exists in the Gold Coast or Lucame tribe; and that the presumption is that the members of that tribe are free.

"Tenth. That if the jury believe that the instrument dated March 14th, 1844, refers alone to notes held against the defendant by Thomas F. McKinney, and if they believe that, at the time of making said instrument, the said McKinney did not actually hold the notes now sued on, then the said instrument does not refer to either of said notes, and cannot take either out of the statute of limitations.

"But the court refused to give the said instructions to the jury.

"To which opinion of the court refusing the said instructions, the said defendant, by his counsel, excepted, and tendered this his sixth bill of exceptions, which he prays may be considered as applicable to the refusal of each and all of said instructions, and be signed, sealed, and made a part of the record in the cause; and the same is done accordingly.

"JOHN C. WATROUS.

"*Saturday, December 23d, 1848.*"

### Seventh Bill.

" Be it remembered, that after the jury were sworn to try the several issues in this cause, the plaintiff, to maintain the said issues on his part, gave in evidence to the jury the testimony stated in full in the former bills of exceptions; and thereupon the defendant, to maintain the said issues on his part, gave in evidence the testimony also stated in the former bills of exceptions.

" Whereupon the counsel for the defendant moved the court to instruct the jury as follows, that is to say:

" First. That if the jury believe, from the testimony and from the instrument dated March 14, 1844, that the said instrument only refers to one note given by the defendant to the plaintiff, and may refer to the first of the notes set forth in the petition as well as to the second; and that it is uncertain to which it particularly refers, they will not apply it to either, and will find for the defendant as to the first note.

" Second. That if the jury believe, from the testimony, that it was agreed between Thomas F. McKinney and the defendant, at the time of the settlement between them in November, 1846, that the instrument dated March 14, 1844, was to be given up to the defendant, and that at that time the said McKinney was authorized to act as agent of the plaintiff with reference to the settlement of the notes now sued on; then the jury will consider such an agreement as an entire discharge and release of the defendant from any promise expressed in the said instrument or to be implied from it, and as entirely cancelling that instrument for the purposes of this suit, and they will find for the defendant as to the first note.

" And the court indeed gave the said instructions, but also, in connection therewith, and in addition thereto, instructed the jury as follows, that is to say:

" First. That whether the said instrument referred to one or both notes or not, and to which it did refer, were questions of fact for the jury to determine; and if they found that the said instrument referred to that note which would otherwise have been barred by the act of limitations, they would consider it as removing that bar.

" Second. That, notwithstanding what was said in the second instruction hereinbefore set forth, if Thomas F. McKinney was not authorized by the plaintiff to surrender to the defendant the instrument dated March 14, 1844, then his agreement to surrender it, if he made such an agreement in the settlement of his individual transactions, did not prejudice the right of the plaintiff to the possession, production, and effect of such instrument, or prevent its acting as a legal bar to the plea of the

act of limitations; and if the said McKinney had surrendered the paper without authority from Toby, Toby could have given notice to produce the paper at the trial; and, if it had not been produced, could have gone into parol proof of its contents.

"To which opinion of the court, giving the said first-mentioned instructions, and also giving the qualifications and additions immediately preceding, the said defendant, by his counsel, excepted, and tendered this his seventh bill of exceptions, which he prays may be considered as applicable to each of the said instructions, and be signed, sealed, and made part of the record in the cause; which is done accordingly.

"JOHN C. WATROUS.

"*Saturday, December 23d,* 1848."

### Eighth Bill.

"Be it remembered, that after the jury were sworn to try the several issues in this cause, the plaintiff, to maintain the said issues on his part, gave in evidence the testimony stated in full in the former bills of exceptions; and thereupon the defendant, to maintain the said issues on his part, gave in evidence the testimony stated in full in the former bills of exceptions. Whereupon the court instructed the jury, among other things, as follows, that is to say:

"First. That the constitution of the republic of Texas, in the 'general provisions,' section ninth, by the words therein used, 'slaves for life previously to their emigration to Texas,' does not necessarily mean 'slaves for life immediately before their emigration to Texas.' [And that the court have no right to put a word into the constitution; that the constitution must be construed as it is, and that the constitutional provision means, that if a man had been a slave for life previous to the time at which he emigrated to Texas, and was held in bondage in Texas at the time the constitution was adopted, and was held in bondage under such circumstances that he would have been the slave of the person so holding him, if slavery existed by law, then the constitution makes him a slave for life.] The last part in brackets was not specially excepted to, and it is here inserted by order of the court, against the wish and the opinion of the counsel for the defendant, who regard it as no part of this bill.

"Second. That the Gold Coast, the Grain Coast, and the Slave Coast are inconsiderable portions of Africa; and that if it has been proved that slavery exists in one of those portions, the jury may reasonably infer its existence in the others, in the absence of all other proof upon the subject. To which opinion of the court, giving the said instructions to the jury, the de-

fendant, by his counsel, excepted, and tendered this his eighth bill of exceptions, which he prays may be considered as applicable to each of the said instructions, and may be signed, sealed, and made part of the record in this cause; which is done accordingly.

"JOHN C. WATROUS.

" *Saturday, December* 23*d,* 1848."

The verdict and judgment were in favor of the plaintiff, for $ 5,758.04.

Upon the above exceptions the case came up to this court, and was argued by *Mr. Harris* and *Mr. Johnson,* for the plaintiff in error, and *Mr. Bibb,* for the defendant in error.

The counsel for the plaintiff in error made the following points.

We conceive it would be difficult to give any valid reasons for the decision of the court in sustaining the exceptions to pleas numbered eleven, thirteen, sixteen, and eighteen. By reference to these it will be seen, among other things, that they state that the plaintiff's portion of the purchase-money of these negroes was, in 1840, included in a note executed by the defendant, and made payable to McKinney & Williams; and that while this note was in existence, the said plaintiff, under the insolvent law of Louisiana, made, among other things, a cession of his interest in this note for the benefit of his creditors; that it was accepted by the court and by his creditors, and that syndics were appointed to take charge of said effects; that the notes sued on were given subsequently to said cession, and for the purchase-money of the said negroes; that they were accepted by said plaintiff in fraud of the laws of Louisiana, and of the rights of the creditors of said plaintiff, and of the rights of this defendant; and that when said notes were made and delivered, the knowledge of said cession was fraudulently withheld from this defendant; and that said notes were given without consideration.

To show that the positions taken in these pleas were correct, and the pleas themselves were valid, reference is made to Levy *v.* Jacobs et al., 12 La. Rep. 109; Messes Syndics *v.* Yarborough et al., 11 La. Rep. 531. These authorities show that, when a cession is made by an insolvent debtor, all his property and rights are transferred to his creditors, whether they be placed in his schedule or not.

After the surrender and appointment of syndics, the ceding debtor has no longer any capacity to appear in court in relation to the property surrendered. McIntire *v.* Whiting, 7 La.

Rep. 273. He loses the capacity of instituting suits. Goodwin v. Chesneau, 4 N. S. 103. The sale by him of property not placed on the inventory is a nullity, and will not support prescription. Duplessis v. Roulet et al., 11 La. Rep. 345.

Where he is defendant in the court below, he cannot even appeal in regard to transferred property. Knight & Callender v. Debtors, 10 La. Rep. 228. See Chitty on Contracts, 196.

These authorities, we think, show that the exceptions to these pleas ought not to have been sustained.

The proceedings in Louisiana passed Toby's title to personal property and debts situated in Texas. See Story's Conflict of Laws (ed. 1846), §§ 420, 421. The first of these sections (420) shows that the assignee could maintain an action in Texas in his own name. (See also note 2 to this section.)

Assignees or syndics of a foreign bankrupt may sue. Alivon v. Furnival, 1 Cromp., Mees., & Rosc. 296. See also Story's Conflict of Laws, §§ 398, 399, 355, 566, 353 a; Cook v. Lansing, 3 McLean, 571.

The execution of these notes did not discharge the original debt. Chitty on Contracts, 767, and note; Smith's Mercantile Law, 529, and note; Muldon v. Whitlock, 1 Cowen, 306. See also Glasgow v. Stevenson, 6 N. S. (La. Rep.) 567.

On the part of the plaintiff in error, it will be further contended, that the District Court erred, —

I. In submitting exhibit 3 to the jury, to be construed by them; we contend that it should have been construed by the court. See 1 Starkie's Ev. 463; Morrell v. Frith, 3 Mees. & Wels. 402; 8 Car. & Payne, 246; 1 Bing. 266; Snook v. Mears, 5 Price, 636; Clarke v. Dutcher, 9 Cowen, 678; Chapin v. Warden, 15 Vermont, 560.

II. Said instrument was not such an acknowledgment of the justice of a debt as is required in order to take a case out of the operation of the statute of limitations.

Exhibit 3 amounts only to a contract not to plead the statute of limitations. See Warren v. Walker, 23 Maine, 453.

III. Said instrument (exhibit 3) was not an acknowledgment of any debt or note, according to its tenor, and could not take such debt or note out of the statute of limitations, or enable a party to recover on it. It was merely a promise to pay a debt in a particular way, viz. by delivering an amount of cotton annually. And we contend that the plaintiff cannot make said instrument available in this suit; for, as a contract, it departs from the original note, and cannot sustain it. It amounts in itself to a substantive contract, and controls the rights of the plaintiffs. See Bell v. Morrison, 1 Peters, 362; and Angell on Limitations, ch. 20; see also ch. 21, on Conditional Acknowl-

edgments. This was a restricted acknowledgment or promise. It was a departure from the note, and the obligee cannot use it for the mere purpose of acknowledgment. He cannot take it as the contract of the defendant only.

Again, a party is entitled to recover only when he proves the existence of his claim or debt; a plaintiff is never permitted to recover, when the proof leaves the matter uncertain as to whether the debt is due or not; and in this case, if we admit that exhibit 3 refers to one or the other of the notes sued on, still, we contend, it fully appears, from the face of the instrument, that it refers to not more than one of them, and it is utterly uncertain to which it really does refer. The same argument that might be used to show that it referred to one could, word for word, be used to show that it referred to the other. Hence we contend that it cannot be applied to the first note, so as to take that out of the operation of the statute; for it amounted to no proof that this was the note to which it related. Being thus indefinite, it ought not to have been admitted as evidence. See Angell on Limitations, 254 – 257; Bailey v. Crane, 21 Pick. 323; Stafford v. Bryan, 3 Wend. 532; Moore v. Bank of Columbia, 6 Peters, 86; Clarke v. Dutcher, 9 Cowen, 678; Holmes v. Green, 1 Starkie, 397.

IV. Said instrument was not admissible, because it was a promise to pay or to deliver cotton to Thomas F. McKinney, and not to Thomas Toby, the plaintiff.

V. Thomas F. McKinney, to whom this instrument was given, for a valuable consideration, agreed that it should be given up to Randon and discharged. This, we contend, is proved by the testimony of John Randon; and the court, we think, erred in instructing the jury that special authority from Toby to McKinney to release said instrument was necessary; and unless he was Toby's agent for this purpose, his discharge of the instrument divested Toby of no right under it. It amounted to a contract, new, distinct, and substantive. It was made with Thomas F. McKinney; he was the party to it, and we contend that he had a right to release it, unless Randon knew that his authority had ceased, and that he was acting fraudulently; and we contend that his contract to give it up vacated all rights under it. The presumption was that McKinney continued to act as the agent of Toby until Randon was notified to the contrary. See Story on Agency, ch. 15, p. 493; Chitty on Contracts, 780.

McKinney's testimony shows that this instrument was given to him; that he then held the notes sued on; that it was a promise to him; and, so far as Toby was concerned, he had obtained it gratuitously and officiously.

Randon v. Toby.

VI. It is clear from the law of Spain, contained in the transcript, that, had these negroes been slaves in Africa (of which there is certainly no proof), still they would have become free on their arrival in Cuba. Then they contined free, unless they were made slaves by the constitution of the late republic of Texas; and in order that this should have occurred, three things must have existed, viz.:—1st, they must have been slaves for life previous to their emigration to Texas; 2d, they must have been held in bondage when the constitution was adopted; 3d, they must have been "the bonâ fide property of the person so holding them." Now, in the first place, we contend that these negroes were free when they were exported from Cuba to Texas. In the second place, we contend that the constitution means only to make those persons slaves who were lawfully held in bondage; it could not be otherwise than that these were tortuously held in bondage. And, in the third place, they being free in Cuba, they could by no possibility whatever, either on that island or in Texas, have become slaves for life; and therefore could not have become the bonâ fide property of the person holding them. Besides, the term "emigration," used in the constitution, could not have been intended to mean persons who were imported into Texas for traffic, either mediately or immediately, from the coast of Africa. The whole object and intention of this clause of the constitution seems to have been, to make such as were slaves for life in the United States when they emigrated slaves in Texas. This view of the subject is, we think, sustained by the whole section, and is very strongly sustained by the last portion, which provides that " the importation or admission of Africans or negroes into the republic, excepting from the United States of America, is for ever prohibited, and declared to be piracy." And we contend that the court erred in charging, in effect, that the constitution intended to make slaves of persons who were free before their arrival in Texas.

VII. The court erred in admitting the testimony of Thomas M. League. He was no expert, and was consequently incompetent to testify as to foreign laws or customs.

VIII. The court erred in admitting proof of slavery in Africa, and in charging that this came within the provision of the constitution.

History teaches that slavery in Africa is dependent upon force, and is the result of battles and struggles not recognized by civilized nations, nor by the laws of nations. And such a state of slavery could not have been within the design of the constitution of the late republic. This view is sustained by the Amistad case, 15 Peters, 593.

43*

And it is. well known that, in the prosecution of the slave trade, but little regard is paid to the condition of the African, as to whether he is bond or free.

IX. The court erred in charging that the Gold Coast, Slave Coast, &c., are inconsiderable parts of Africa, and proof that. slavery existed in one part afforded a presumption that it existed in another part. This, we contend, is repugnant alike to reason and to experience. If a similar case were to be tried in any court in Europe, would proof that slavery existed in Maryland amount to proof that it existed also in Massachusetts? Yet this presumption would be much more reasonable than the charge of the court, for these States are under the same general government, and the different tribes in Africa are all independent, and are generally hostile towards each other

Again, this charge expressly violates that provision of the statute of Texas which provides, that " the judge shall not in any case, civil or criminal, charge or comment on the weight of the evidence or testimony," &c. See Acts of 1846, p. 360, § 99.

These negroes having been introduced into Cuba and into Texas against law, we contend that the purchase-money for which they were sold cannot be recovered; and that it was entirely immaterial whether they were then bond or free. Billard et al. v. Hayden et al., 12 English Common Law Reports, 222. See also Law v. Hodgson, 2 Campbell's Nisi Prius Reports, 147.

*Mr. Bibb*, for defendant in error, classified the bills of exceptions according to their subjects, instead of considering them numerically.

### First Bill of Exceptions.

The exposition of the instrument No. 3, which the court was moved to adopt, confined it to the one note only; applied it to No. 1, payable 21st June, 1843 (within the period of prescription), to the exclusion of note No. 2, payable 21st June, 1842, more than four years next before suit brought, so that the bar by the statute might apply. That exposition the court refused to adopt, and admitted the instrument to be read in evidence to the jury.

This exposition dwells upon one expression, " my note," to the total neglect of the antecedent and consequent parts. The instrument recites " several notes," held by McKinney & Williams, and Thomas F. McKinney, agent of Thomas Toby, some two years before, on which said Randon had obtained farther indulgence over and above the time of " their maturity"; that said indulgence was granted by Thomas F. McKinney, upon Randon's promise then to appropriate half his crops

every year to pay the amount due said McKinney & Williams, if there be any thing due them over and above the amount of purchase of negroes bought of them, and " then in extinguish‑ ment of said amount of purchase of negroes." From this re‑ cital it is plain that there were " several notes," not two only, upon which the indulgence had been granted; and that the " several notes," " past due," upon which the indulgence had‑ been so obtained some two years before, were all‑drawn in con‑ sideration " of the amount of purchase of negroes"; and that the proceeds of half the crops were to be applied, secondly, " in extinguishment of said amount of purchase of negroes." So the " several notes" were in consideration " of said amount of pur‑ chase of negroes." All the several notes were included in the arrangement of 1844 for payment by the addition of the other half of the crops; all were included in the promise, " that no advantage shall be taken, or any plea of statute of limitations be made to avoid the payment of said notes, but they shall be and remain in as full force and effect as though they were re‑ newed."

Shall the expressions " several notes," " farther indulgence on said notes," " said amount of purchase of negroes," no ad‑ vantage of the statute of limitations " to avoid the payment of said notes," but " they shall be" as though they were " re‑ newed," be passed over and made nugatory, by harping solely upon the words " of which my note to said Toby is a part of consideration "?

The sages of the law, in the exposition of treaties, pacts, statutes, testaments, deeds, and other instruments, have used and handed down to us rules which are commended as the dic‑ tates of enlightened reason and common sense, whereof the following will suffice for the present, viz.: —

" That the construction be made on the entire instrument, and that one part of it doth help to expound another, and that every word (if it may be) may take effect and none be rejected, and that all the parts do agree together, and there be no dis‑ cordance therein. Ex antecedentibus et consequentibus est optima interpretatio. For Turpis est pars quæ cum suo toto non convenit. Maledicta expositio quæ corrumpit textum."

" That the construction be such as, the whole and every part of it may take effect, and as much effect as may be for that purpose for which it was made." Touchstone, ch. 5, § 4, p. 87.

To cavil about the words in subversion of the plain intent of the parties, is a malice against justice and the nurse of in‑ justice. Throckmerton v. Tracy, Plowd. 161.

A man ought not to rest on the letter only, " nam qui hæret in litera hæret in cortice, but he ought to rely upon the sense,

which is the kernel and the fruit, whereas the letter is but the shell." Eyston *v.* Studd, Plowd. 467.

"Falsa orthographia, falsa grammatica, non vitiat cartam vel concessionem," nor the singular instead of the plural number, nor the plural instead of the singular. Earl of Shrewsbury's case, 9 Co. 48 a ; Co. Litt. 146 b.

"The office of a good expositor is to make construction on all the parts together, and not of one part only by itself. Nemo enim aliquam partem recte intelligere possit, antequam totum iterum atque iterum perlegerit." Lincoln College's case, 3 Co. 59 b ; 8 Viner, p. 181, F, a, pl. 7.

Construction must be made in suppression of the mischief, and in advancement of the remedy. Co. Litt. 381, b.

The construction insisted on by the counsellors for Randon, in this bill of exception, violates all the rules of construction ; it dwells upon a word only ; disregards the preceding and succeeding parts ; corrupts the text ; sticks in the shell, tastes not of the kernel ; and disregards the purport and intent of the writing. The bar, by the statute of limitations, was the mischief to arise from further indulgence ; the remedy intended was, that no advantage of the statute should be taken ; that the notes should remain in as full force and effect as if renewed. But the exposition insisted on is for the purpose of inflicting the very mischief which the instrument intended to avoid ; to apply the remedial agreement to the note payable at twenty-four months, not barred by the statute, and exclude note No. 2, payable at twelve months, that it may be barred.

### Third Bill of Exceptions.

After Randon had, by plea upon plea and amendment upon amendment, averred that the only consideration for the notes sued on was African negroes imported into Texas, and sold by said Toby or his agent, and after he had adduced T. F. McKinney as a witness, and proved by him that both the notes sued on were given in consideration of Toby's interest in the negroes, and in the note to McKinney & Williams of 1st September, 1840, and that Randon knew it, then his witness was, upon cross-examination, asked by the counsel for Toby to what note or notes from David Randon to Thomas Toby the instrument in writing dated 14th March, 1844, referred. Said witness answered, "that it referred to both of the promissory notes sued on, being the same filed with amended petition, marked 1 and 2"; thereupon the counsel for Randon moved the court, "that the said evidence of the said McKinney should be ruled out and withdrawn from the jury, because the same was contradictory to the said writing marked No. 3, as afore-

said, which it pretended to explain; the said writing referring only to one note from David Randon to Thomas Toby."

The construction of the instrument insisted on by that objection is still founded upon the one word "note," the one idea "my note," culled out and separated from the body of the instrument, as if the true reading and sense did not save from the statute of limitations the whole debt in arrear for the purchase of the negroes, as well the balance due to Toby for his interest in the negroes, as the balance due to McKinney & Williams upon the note to them of September 1st, 1840, which was also given for the purchase of the negroes.

That the instrument No. 3 refers to the whole amount of the purchase of the negroes, which had been divided into parts, the one part payable to McKinney & Williams, the other payable to Thomas Toby upon the two notes to him for his interest in the negroes, is the legal construction of the instrument. The answer of the witness Thomas F. McKinney, that the instrument referred to both the notes to Toby, is consistent with the legal construction of the instrument when applied to the facts existing at its date; it is not altering nor contradicting the instrument by any new secret averment, but is in accord with its true meaning and legal effect,—with the sound exposition of the instrument viewed in all its parts. The words, "of which my note to said Toby is a part of consideration," are explained by the antecedent and consequent parts to mean, "of which my *debt* to said Toby is part of consideration of the amount of purchase of negroes." The word "note" means token of a debt, paper given in confession of a debt, and may well be used as a noun collective (*nomen collectivum*) to signify a debt upon one consideration divided into two parts, payable at different days.

The court could not have given the opinion that McKinney's testimony contradicted the instrument No. 3, without falsifying fact and law.

### Sixth Bill of Exceptions.

This subject is again moved in the sixth bill of exceptions, by two instructions asked of the court and refused.

"1st. That the instrument dated 14th March, 1844, does not itself amount in law to an acknowledgment of the justice of any particular claim, and cannot remove the bar of the act of limitations to either of the particular notes now sued on."

"10th. That if the jury believe that the instrument dated March 14th, 1844, refers alone to notes held against the defendant by Thomas F. McKinney, and if they believe that at the time of making said instrument the said McKinney did not

actually hold the notes now sued on, then the said instrument does not refer to either of said notes, and cannot take either of said notes out of the statute of limitations."

To what has been said heretofore upon the exposition of the instrument of 14th March, 1844, I will add, that it not-only acknowledges the justice of the debt to Toby for his part of the negroes, but expressly waives the advantage of the statute of limitations; the maxim is, "Quilibet renunciari potest beneficium juris pro se introducto."

The tenth instruction contains two vices;—1st, a proposition to refer the legal exposition of the instrument to the jury; 2d, a false construction, founded upon the mere letter, in subversion of the sense and intent of the instrument.

In the seventh bill of exceptions this subject is again moved by the first instruction, and exception taken to the qualification with which the court gave that instruction to the jury.

### Seventh Bill of Exceptions.

The instruction moved was, "that if the jury believe from the testimony, and from the instrument dated 14th March, 1844, that said instrument only refers to one note given by defendant to plaintiff, and may refer to the first of the notes set forth in the petition as well as to the second, and that it is uncertain to which it particularly refers, they will not apply it to either, and will find for the defendant as to the first note."

The court gave the instruction with this qualification: "that whether the said instrument referred to one or both notes or not, and to which it did refer, were questions of fact for the jury to determine; and if they found that the said instrument referred to that note which would otherwise be barred by the act of limitations, they would consider it as removing the bar."

To this instruction as given, the counsel for Randon excepted.

Still harping upon the word "note," upon the one idea "my note," sticking in the letter, in the moss of the bark, blind to the substance, the counsellors of Randon would not be content with an instruction by the court more favorable than any which ought to have been given upon this their motion. Verily, their devotion to this word "note," to the one idea "my note," evinces a zealous, unreasonable idolatry, divided by a very thin partition from foolishness.

The proper province of the court is to construe the words of a written instrument; the proper province of the jury is to try and find facts, but not the legal meaning and effect of writings.

This instruction as moved ought to have been rejected totally. That the court erred in giving an instruction on the

motion of the defendant Randon, beneficial to him and not to his prejudice, is not assignable for error by him upon his writ of error.

As this seventh bill of exceptions has been mentioned, the other point of exception contained in it may be disposed of.

The counsel for Randon moved the instruction to the jury, secondly stated on page 504, which the court gave, with this addition and explanation : —

" If Thomas F. McKinney was not authorized by the plaintiff to surrender to the defendant the instrument dated March 14th, 1844, then his agreement to surrender it, if he made such an agreement in the settlement of his individual transactions, did not prejudice the right of the plaintiff to the possession, production, and effect of such instrument, or prevent its acting as a legal bar to the plea of the act of limitations; and if the said McKinney had surrendered the paper without authority from Toby, Toby could have given notice to produce the paper at the trial; and, if it had not been produced, could have gone into parol proof of its contents."

This addition to instruction second, moved by Randon's counsel, and given by the court, was necessary and proper, inasmuch as it had been expressly proved by the said Randon's witness, Thomas F. McKinney, and Toby's witness, E. McLean, that the notes to Toby were not included in the settlement alluded to, and that neither McKinney nor McLean had any authority to settle the notes sued on; neither did they profess to Randon to have any such authority.

A person may have an action on a stipulation in his favor in a deed to which he was not a party.  Mayor v. Bailey, 5 Martin, 321.

### Second Bill of Exceptions.

Randon's second bill of exceptions states an objection by the plaintiff Toby to evidence offered of a receipt dated November 11, 1846, signed by Thomas F. McKinney, for himself and McKinney & Williams, according to a settlement made for them by E. McLean, because not relevant or pertinent to any matter in issue; which objection was sustained.

The exclusion of that receipt was clearly proper.  There is neither "ambiguitas latens," nor ambiguitas patens," about which to start an argument.  David Randon's witnesses, John Randon and T. F. McKinney, and Toby's witness, McLean, concur that the notes to Toby were not included in the said settlement made by McLean, alluded to in the receipt offered in evidence by Randon; that said McLean had no authority to settle the notes to Toby.

The instrument, upon its face, excludes any pretence that the debt of Randon to Toby due by the notes now sued was settled or acquitted thereby.

### *Fourth Bill of Exceptions.*

The point of the fourth bill of exceptions is this: that the plaintiff, Toby, objected to the evidence offered by defendant, Randon, consisting of the copy of the record of the proceedings in the court of the State of Louisiana between Thomas Toby and Thomas Toby & Brother *v.* Their Creditors; which objection was sustained by the court.

The record objected to is the transcript of the proceeding begun on the 8th of October, 1840, in the State of Louisiana, fifth judicial district, by petition and schedule of estate, filed by the partners Thomas Toby & Brother, and Thomas Toby, in his individual name, against their creditors, under the law of that State respecting insolvent debtors.

Pleas upon this same subject of the *cessio bonorum*, and supposed assignment of Toby's latent right to a part of a chose in action, and his concealment of such assignment when the after notes of the 21st of June, 1841, were executed, are to be found in the record.

Remarks upon such pleas have been reserved, so that the insufficiency of the pleas rejected by the court, and the propriety of the decision of the court in rejecting the record of the proceedings in Louisiana, as to the *cessio bonorum*, might be compressed into one and the same argument. That argument is properly divisible into two heads:—

1. The facts of the case.
2. The law of the case.

1st. As to the facts. The chronological order of events shows that at the filing of the petition and schedule, 8th October, 1840, and at the acceptance thereof by the creditors, at the time of the discharge given by the creditors, and at the time of the confirmation of all those proceedings by the order of the court of 27th November, 1840, the interest of Thomas Toby in the negroes in Texas had been sold, and that interest was included in the note given by Randon to McKinney & Williams, of 1st September, 1840, so that Toby had only an unexpressed, latent, equitable interest in the chose in action for $ 10,949.48, executed by Randon to McKinney & Williams, which included Toby's interest, and also the interest of the other cotenants in the negroes previously sold to Randon. This interest of Thomas Toby in the choses in action, payable to McKinney & Williams, was never severed until the notes now sued on, dated 21st June, 1841, were executed by Randon to Thomas Toby.

Upon these facts the law is clear that the latent, equitable, undivided interest of Thomas Toby in the chose in action, payable to McKinney & Williams, was not assignable, did not pass by the proceedings in Louisiana from Toby to his creditors, and was not required by the laws of Louisiana to have been assigned by Toby to his creditors, under the said proceedings and *cessio bonorum*.

A debt as between debtor and creditor is indivisible without the consent of both. Kelso *v*. Beaman, 6 La. Rep. 90.

No debtor is bound to pay a debt by portions, and no partial transfer can be made by a creditor so as to be binding on a debtor, even when notice is given, except by the express consent of the latter. Miller *v*. Brigot et al., 8 La. Rep. 536; Poydras *v*. Delamere, 13 La. Rep. 101; Mandeville *v*. Welch, 5 Wheat. 277.

Those decisions show that the exception to the admissibility of the record was properly ruled by the court, and that the decisions rejecting pleas respecting the *cessio bonorum* were also proper.

(The arguments of *Mr. Bibb*, upon the fifth, sixth, and eighth bills of exceptions, relative to slavery in Africa, &c., are omitted.)

Mr. Justice GRIER delivered the opinion of the court.

Had this case been conducted on the principles of pleading and practice, known and established by the common law, a short declaration in assumpsit, a plea of *non-assumpsit*, and *non-assumpsit infra sex annos*, would have been sufficient to prepare the case for trial on its true merits. But, unfortunately, the District Court has adopted the system of pleading and code of practice of the State courts; and the record before us exhibits a most astonishing congeries of petitions and answers, amendments, demurrers, and exceptions, — a wrangle in writing extending over more than twenty pages, and continued nearly two years, — in which the true merits of the case are overwhelmed and concealed under a mass of worthless pleadings and exceptions, presenting some fifty points, the most of which are wholly irrelevant, and serve only to perplex the court, and impede the due administration of justice. The merits of the case, when extricated from the chaos of demurrers and exceptions in which it is enveloped, depend on two or three questions, simple and easily decided. We do not deem it necessary, therefore, to inquire whether the court below may have erred in their decision of numerous points, submitted to them, which have no bearing on the merits of the case, and are of no importance to the just decision of it. It will be unneces-

sary to decide whether the judge erred in his construction of *the laws of Africa !!!* and other questions of a similar character, provided it shall appear that, on the admitted facts of the case, he should have instructed the jury that the defendant had established no just defence to the plaintiff's action.

On the trial, the plaintiff gave in evidence two notes executed by defendant, and purporting to be for value received, payable to the plaintiff or his order.   They were dated in June, 1841, and payable in one and two years.   Three distinct defences were set up by defendant, which had some apparent foundation of fact to support them ;  a fourth, that the defendant had paid the notes to McKinney, the agent of the plaintiff, being proved to be false in fact, need not be further noticed.

1st.  The first was the statute of limitations, of four years, of the State of Texas.

2dly.  That the plaintiff had made an assignment of all his property to his creditors, and therefore had no right to recover.

And 3dly.  That the notes were given for the purchase of negroes imported from Africa to Cuba and thence to Texas in 1835, and consequently that the defendant had received no consideration, because the negroes, being imported contrary to law, were entitled to their freedom.

We shall notice these points of defence in their order.

1st.  The plea of the statute of limitations was *primâ facie* good, as to one of the notes, as suit had not been instituted till more than four years after it became due.   But the plaintiff rebutted this plea by the exhibition of the following agreement, signed by Randon, the defendant.

"This instrument of March 14th, 1844, witnesseth : That whereas McKinney & Williams, of Galveston, and Thomas F. McKinney, agent of Thomas Toby, of New Orleans, hold several notes drawn by me, and past due ; and Thomas F. McKinney, some two years since, did agree for McKinney & Williams, and the said Thomas Toby, to grant me further indulgence on said notes, over and above the time of their maturity ; and I did then say, promise, and agree, that I would deliver to him, the said Thomas F. McKinney, each and every year, all the one half of every crop of cotton in payment, first of the amount due the said McKinney & Williams, if there be any thing due them over and above the amount of purchase of negroes bought of them, and then in extinguishment of said amount of purchase of negroes, of which my note to said Toby is a part of consideration ; and I further agree and oblige myself, that any surplus I may have from the proceeds of the other half of my crops, over and above my wants, exclusive of any speculations or purchase of negroes, shall also be turned

over as above; and I further bind and obligate myself, my heirs, assigns, and administrators, that no advantage shall be taken, or any plea of statute of limitations be made, to avoid the payment of said notes, but they shall be and remain in as full force and effect as though they were renewed.

"D. RANDON."

This agreement, being founded on a good consideration and accepted by the plaintiff, became incorporated in the notes, and formed a part of the contract, by mutual consent. It extended the time of payment, and the statute did not begin to run till the extended time had expired. It operated also by way of estoppel *in pais* to a defence under the statute of limitations. Otherwise the defendant would gain an advantage by his own fraud, or put the plaintiff to an action on the agreement. On one or the other of these principles, the doctrine of estoppel has its foundation. The plea of the statute is a breach of the agreement, and, to avoid circuity of action, it may be set up in avoidance of the plea. Moreover, the stipulation in this agreement forms a new promise on good consideration to pay the money, which has always been held as a sufficient replication to the plea of the statute of limitations.

It has been a subject of complaint in this case, also, that the court submitted the construction of this instrument of writing to the jury. But the defendant cannot allege this as error. First, because it was done at his own request; and secondly, because the court should have instructed the jury that the construction contended for by the defendant was wholly without foundation. The use of the word "note," in the singular number, instead of "notes," is so palpable a slip of the pen, that its use, although furnishing an opportunity for cavil, could not be said to create an ambiguity on the face of the instrument, or leave any doubt as to its true intent in the mind of any one who will read the whole of it together, and has no intent or desire to pervert it. It refers to "several notes," it acknowledges that "further indulgence was granted on said notes," and "obligates" the defendant not to plead the statute of limitations to "said notes." Both the notes to Toby were admitted to be part of the consideration paid for the purchase of the negroes referred to in the agreement; consequently, the use of the word "note" was a mere error in grammar, or slip of the pen.

By the settlement with McKinney and the firm, and payment of the notes held by them against the defendant, this paper became useless and inoperative as to them; but as there is no pretence that the notes of Toby were paid, the surrender of the agreement to Randon would have been a fraud on

Toby, and the promise of McKinney to do so cannot invalidate its legal effect.

2d. The record given in evidence, to show the insolvency of Toby and his assignment under the proceedings in Louisiana, after the purchase of the negroes and before the notes now in suit were given, constituted no legal defence to the action. The taking of the note payable to Toby was no fraud on the defendant; Toby was himself one of the syndics or assignees to settle his insolvent estate; he had a right to secure the debt and give an acquittance for it, and whether he took the note payable to himself individually, or as syndic, and whether he has accounted for it to his creditors, or may be bound to do it hereafter when the money is received, are questions with which the defendant has no concern whatever.

3d. The plea that the notes were given for African negroes imported into Texas after the year 1833 is equally unavailable, as a matter of defence, with those already mentioned. This fact seems to have been alleged in the pleadings, as showing a want of consideration. On the argument here, it was endeavored to be supported on the ground that the notes were void, because the introduction of African negroes, both into Cuba and Texas, was contrary to law. But in neither point of view will these facts constitute a defence in the present case. If these notes had been given on a contract to do a thing forbidden by law, undoubtedly they would be void; and the court would give no remedy to the offending party, though both were *in pari delicto.* But Toby or his agent, McKinney, had no connection with the person who introduced the negroes contrary to law. Neither of the parties in this case had any thing to do with the original contract, nor was their contract made in defiance of law. The buying and selling of negroes, in a State where slavery is tolerated, and where color is *primâ facie* evidence that such is the *status* of the person, cannot be said to be an illegal contract, and void on that account. The crime committed by those who introduced the negroes into the country does not attach to all those who may afterwards purchase them. It is true that the negroes may possibly, by the laws of Texas, be entitled to their freedom on that account. If the defendant had shown that the negroes had sued out their freedom in the courts of Texas, it would have been a good defence. In every sale of personal property there is an implied warranty of title, for a breach of which a vendee may sue his vendor and recover the price paid; and on a suit for such price may plead want of consideration or eviction by a better title. But that is neither alleged nor proved in the present case. On the contrary, the defendant

held and enjoyed the negroes, and sold them and received their value; and the negroes are held as slaves to this day, if alive, for any thing that appears on the record. As respects the defendant, therefore, he has received the full consideration for his notes, the title to his property has never been questioned, nor has he been evicted from the possession, or threatened with eviction. Consequently he has no right to set up a defence under the implied warranty of title, or for want of consideration.

If the defendant should be sued for his tailor's bill, and come into court with the clothes made for him on his back, and plead that he was not bound to pay for them, because the importer had smuggled the cloth, he would present a case of equal merits, and parallel with the present; but would not be likely to have the verdict of the jury or judgment of the court in his favor.

The defendant has bought these negroes in the condition of slaves *de facto*, with the *prim facie* evidence of their *status* imprinted on their forehead; he has held them as slaves, he has sold them as such, and he has no right to call upon the court in a collateral action, to which neither the slaves nor their present owners are parties, to pronounce on the question of their right to freedom, especially in support of a defence which has so little to recommend it.

Having thus examined the merits of this case, and shown that the court ought to have instructed the jury to find for the plaintiff on the admitted facts of it, we think it wholly unnecessary to examine further the multitude of demurrers or exceptions spread over the record, as no decision of the court below upon them could have wronged the defendant or affected the merits of the case.

The judgment of the court below is therefore affirmed, with costs.

## Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the District of Texas, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said District Court in this cause be, and the same is hereby, affirmed, with costs and damages at the rate of six per centum per annum.

## Supplementary Order.

Mr. Bibb, of counsel for the defendant in error, having stated to the court that it appeared on the face of the record of this case, that Thomas Toby was dead, that the citation was served

44*

on Jonas Butler, his administrator, and that the plaintiff in error had accepted such service of the citation, moved the court that the titling of the case in this court be, David Randon, Plaintiff in error, v. Jonas Butler, Administrator of Thomas Toby, deceased, and that the judgment of this court be entered in behalf of said Jonas Butler. Whereupon it is now here ordered by the court, that the said motion be, and the same is hereby, granted, and that the clerk make the entries accordingly.